

United States Courts
Southern District of Texas
ENTERED

JUN 0 9 2005

Michael N. Milby, Clerk of Court



# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| HEATHER SULLIVAN, | § § | |
| Plaintiff, | § § | |
| vs. | § § § § | CIVIL ACTION NO. H-04-02921 |
| SCALABLE SOFTWARE, INC., NEON SYSTEMS, INC., JMI EQUITY FUND, L.P., doing business as JMI, AND JMI SERVICES, INC., | § § § § § | |
| Defendants. | § § § | |

## MEMORANDUM AND ORDER

### I.  INTRODUCTION

Pending before this Court is a motion for summary judgment filed by the defendant, J.M.I. Services, Inc. (hereinafter "JMI"), (Docket No. 30).[1] This suit revolves around the events leading up to the plaintiff's, Heather Sullivan ("Sullivan"), cessation of employment with Scalable Software, Inc. ("Scalable"), a co-defendant in this matter. Sullivan commenced this action against JMI, as part

---

[1] Also pending is the plaintiff's motion for continuance filed simultaneously with the plaintiff's response to the defendant's motion for summary judgment. Because the Court has determined that Sullivan has failed to demonstrate how the additional discovery that she seeks will likely create a genuine issue of material fact, her motion for continuance is denied. *See Stearns Airport Equip. Co., Inc. v. FMC Corp.,* 170 F.3d 518, 535 (5th Cir. 1999) (citing *Krim v. BancTexas Group, Inc.,* 985 F.2d 1435, 1442 (5th Cir. 1993)).

of a single, integrated enterprise of Scalable and Neon Systems, Inc. ("Neon") (collectively referred to as the "defendants"), alleging claims of sex, pregnancy and disability discrimination, sexual harassment, violations of the Family and Medical Leave Act ("FMLA") and breach of contract pursuant to 42 U.S.C. §§ 2000e-5 (2000), 42 U.S.C. §§ 2000e-3 (2000), 42 U.S.C. § 2601 *et. seq.* and Texas common law.

The Court accepts jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (2000). After having carefully considered the motion, response and the applicable law, the Court is of the opinion that JMI's motion for summary judgment should be GRANTED. Accordingly, Sullivan's motion for continuance is hereby DENIED.

## II. FACTUAL BACKGROUND

Scalable is a privately held corporation organized and existing under the laws of the state of Delaware with its headquarters located in Houston, Texas. Scalable is in the business of providing software solutions to companies in order to help them manage their information technology assets and activities.

On or around March/April 2003, JMI[2] was one of Scalable's investors. JMI is an investment firm that maintains offices in San Diego, California. It is in the business of investing in growing software and business service companies throughout the country. JMI employs its own employees and maintains its own financial, accounting, human resources and payroll systems. However, during

---

[2] The evidence in the record establishes that JMI is the largest shareholder of Scalable. JMI, John J. Moores and certain other JMI Funds own approximately 28% of Scalable's total common stock equivalence. (Ex. 5 to Pl.'s Resp. to Def.'s Mot. for Summ. J.).

2

the time period relevant to this lawsuit, Charles E. Noell, III ("Noell")[3] and John J. Moores ("Moores"),[4] though officers and/or employees of JMI, served as members of Scalable's board of directors. In addition, evidence in the record indicates that a third individual, Abraham Mahda, was a former Vice President of Product Safety for Scalable as well as an employee of JMI from March 1, 2003, through October 31, 2004.

On May 29, 1999, Sullivan began working for Scalable as a project manager. Sometime in 1999, she was promoted to the position of Director of Project Management. Subsequently, in August of 2002, Sullivan became pregnant with her first child. In January 2003, upon doctor's orders and pursuant to an express agreement with Scalable, Sullivan began working a split schedule whereby she agreed to work two days in Scalable's office and three days at home. Nevertheless, despite her split schedule, she continued to work for Scalable on a full-time basis.

In February 2003, due to doctor's orders, Sullivan and Scalable agreed that she would continue working part-time at her home at a full rate of pay. In March, 2003, as a result of more pregnancy-related complications and doctor's orders, Sullivan sought medical leave with the express consent of Scalable. On or around April 1, 2003, while on medical leave, Sullivan received a letter from Wayne E. Webb, Scalable's Chief Executive Officer, informing her of the elimination of her position at Scalable and termination of her employment.

On July 19, 2004, Sullivan commenced the instant action against Scalable, Neon and JMI alleging claims of sex, pregnancy and disability discrimination, sexual harassment, violations of the

---

[3]Charles E. Noell, III (and affiliates) has a 15% ownership interest in Scalable. (Ex. 7 at p. 21 to Pl.'s Resp. to Def.'s Mot. for Summ. J.).

[4]John J. Moores (and affiliates) has a 24% ownership interest in Scalable. (Ex.7 at p. 21 to Pl.'s Resp. to Def.'s Mot. for Summ. J.).

FMLA and breach of contract. JMI now moves for summary judgment on all of Sullivan's claims.

## III. CONTENTIONS OF THE PARTIES

JMI contends that summary judgment in this case must be granted in its favor as to all of the claims asserted by Sullivan. JMI argues that as a matter of law, it cannot be held liable to Sullivan under federal employment laws because it is not, nor has it ever been, Sullivan's employer. JMI contends that it had no employment agreement with Sullivan, nor did it play any role in Sullivan's termination. JMI contends that it is undisputed that Sullivan was employed by Scalable, a company separate and independent of JMI. JMI argues that it does not maintain any of Scalable's records or systems, nor does it pay any of Scalable's employees. JMI further alleges that it has no control over any of Scalable's employee's or employment functions. Accordingly, JMI argues that it is entitled to judgment as a matter of law on all of Sullivan's claims.

Sullivan argues that JMI, as part of a single, integrated enterprise with Scalable and Neon, discriminated against her and other disabled pregnant women. Specifically, Sullivan alleges that the defendants abruptly terminated her employment without warning and without cause as a result of her pregnancy and attendant complications. Sullivan also argues that the defendants unlawfully failed to advise her of her rights under the FMLA and/or to offer her the benefits to which she was entitled to thereunder. Sullivan alleges that after her termination and consistent with the defendants' policies discriminating against women, she was offered a severance package substantially less than what other male, non-pregnant females and non-disabled employees were offered. As a result of the defendants' conduct, Sullivan alleges that she is entitled to damages and that the defendants are not entitled to judgment as a matter of law. Sullivan further alleges that JMI's motion for summary judgment is premature at this point because more discovery is needed to determine the nature of JMI's

involvement in her termination.

## IV. STANDARD OF REVIEW: SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In adjudicating a motion for summary judgment, the Court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 324. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).

The primary inquiry here is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are

material. *Id.* at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of a summary judgment. *Id.*

## V.   DISCUSSION AND ANALYSIS

### I.   Sullivan's Title VII, ADA and FMLA Claims Against JMI

In order to hold JMI liable under Title VII, the Americans with Disabilities Act (the "ADA"), and the FMLA for the alleged discriminatory employment actions against her, Sullivan must demonstrate that JMI was her "employer" within the meaning of the aforementioned statutes. *See Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 403 (6th Cir. 1997); *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999); *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 450 (5th Cir. 1994) (affirming summary judgment on Title VII claim because defendant was not plaintiff's employer), *rev'd on other grounds, Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75 (1998). In the instant case, it is undisputed that Scalable was Sullivan's direct employer. Although generally a direct employment relationship provides the basis for liability under Title VII, the ADA, and the FMLA, "courts, however, have construed the term 'employer' broadly to include superficially distinct entities that are sufficiently interrelated to constitute a single, integrated enterprise." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997) (citing *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 764 (5th Cir. 1993)).

Here, Sullivan argues that JMI, as part of a single, integrated enterprise of Scalable and Neon, discriminated against her and other disabled pregnant women. Specifically, Sullivan asserts that JMI along with the other defendants abruptly terminated her employment without warning and without cause as a result of her pregnancy and attendant complications. To determine whether two distinct companies may be considered as a single employer under federal civil rights statutes, the Fifth Circuit

has considered the following factors: (1) the interrelation of operations; (2) the centralized control of labor or employment decisions; (3) common management; and (4) common ownership or financial control. *Trevino v. Celanese Corp.*, 701 F.2d 397, 403-04 (5th Cir. 1983). Although none of these factors is conclusive or needs to be present in every case, control over labor relations is a central concern. *Lusk*, 129 F.3d at 777 (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)).

Examining the aforementioned factors in relation to the instant case, it is clear that JMI and Scalable cannot be treated as a single, integrated enterprise and/or single employer. First, Sullivan has failed to offer sufficient evidence of the interrelation of operations between JMI and Scalable. In order to demonstrate the interrelation of operations element of the single employer test, Sullivan must establish that JMI "excessively influenced or interfered with the business operations of [Scalable], that is, whether [JMI] actually exercised a degree of control beyond that found in the typical parent-subsidiary relationship." *Lusk,* 129 F.3d at 778. Suggesting factors may include, but are not limited to, evidence that JMI, as the parent corporation: (1) was involved directly in Scalable's daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment with Scalable; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) maintained Scalable's books; (5) issued Scalable's paychecks; or (6) prepared and filed Scalable's tax returns. *id.*; *See, e.g., Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995).

None of the aforementioned factors are present in this case. In fact, the evidence in the record indicates that JMI and Scalable, each, employed their own employees and maintained their own separate financial, accounting, human resources and payroll systems. In support of her claim that JMI and Scalable were sufficiently interrelated for purposes of the single employer doctrine, Sullivan has

only offered evidence of agreements made by and between Scalable and Neon. This evidence alone fails to establish that JMI and Scalable were functionally integrated and is insufficient to support the type of interrelation of operations found in cases treating two entities as a single employer. *See, e.g., McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933-34 (11th Cir. 1987) (finding interrelation of operations where the parent and subsidiary were marketed as "twins in service" and the parent kept the subsidiary's books and records, issued its payroll checks and paid its bills); *Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir. 1983) (finding interrelation of operations where the parent company handled the subsidiary's accounts receivables and its payroll and cash accounting, provided its administrative backup, monitored its sales' shipments, allowed the subsidiary's managerial staff to use its company credit cards and housed the subsidiary's financial accounts at its headquarters).

Next, there is no evidence that there was centralized control of labor or employment decisions between JMI and Scalable, although Sullivan contends that JMI was actively involved in Scalable's employment decisions. In support of her contentions, Sullivan offers evidence concerning certain communications sent among Scalable's management and members of its board of directors regarding issues relative to Scalable's business. These communications reveal that Noell and Moores, both representatives of JMI, were among the board members initiating and/or receiving such communications relative to Scalable's work force and current state of financial affairs. However, upon review of these communications, it becomes apparent that Noell and Moores were initiating and/or receiving these communications in their capacities as members of Scalable's board of directors. That being so, Sullivan has failed to offer any evidence that Noell and/or Moores, by way of these communications, actively controlled or were actively involved in the decision to terminate her

employment with Scalable. Accordingly, these communications, without more, are insufficient to establish that there was centralized control of labor or employment decisions between JMI and Scalable so as to demonstrate that JMI and Scalable were a single employer.

Finally, Sullivan argues that Scalable and JMI shared common management and common ownership or financial control so as to constitute a single employer with Scalable. Although Sullivan has produced some evidence establishing common management and/or ownership between Scalable and JMI, "these factors alone are insufficient to establish single employer status." *Lusk,* 129 F.3d at 778. This Circuit has held that "[a] parent corporation's possession of a controlling interest in its subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability." *Id.* (citing *Baker v. Raymond Int'l, Inc.,* 656 F.2d 173, 180-81 (5th Cir. 1981)). "Only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary-- domination similar to that which justifies piercing the corporate veil- -is sufficient to . . . permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions." *Id.*

Based on the foregoing, the Court finds that Sullivan's summary judgment evidence fails to establish that JMI and Scalable maintained a joint employment relationship and/or were a single employer. While the evidence presented by Sullivan presents some evidence establishing common management and/or ownership between JMI and Scalable, such evidence is too weak to survive scrutiny under the microscope of factual sufficiency so as to support a finding that JMI and Scalable were part of a single, integrated enterprise.

## II. Sullivan's Breach of Contract Claim Against JMI

The final issue before the Court is whether JMI is entitled to summary judgment on Sullivan's breach of contract claim. It is undisputed that Sullivan's employment contract was with Scalable. It is also undisputed that Sullivan received notice of termination of her employment with Scalable from Wayne E. Webb, Scalable's Chief Executive Officer. To date, no evidence has been adduced setting forth any sort of agreement between the parties so as to demonstrate the existence of an employer-employee relationship between JMI and Sullivan. As such, JMI is entitled to judgment as a matter of law on Sullivan's breach of contract claim.

## VI. CONCLUSION

In light of the foregoing discussion and analysis, it is the judgment of the Court that the defendant JMI's motion for summary judgment be hereby GRANTED.

It is so **ORDERED**.

Signed this 9th day of June, 2005.

_____
KENNETH M. HOYT
United States District Judge